UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------X
KEVIN MICHAEL BENTLEY, FELIX TAVARES,
JAMES JOHNSON, JERRY PULLEY, EDWIN RIVERA,
HECTOR CALDERON, KEENAN JENKINS,  JOSEPH
SANTIAGO, LAWRENCE JACKSON, CHRISTOPHER
PURDIE, ROBERT GIL, GERALD EDMONDS, EDWARD
MONTRANO, DWAYNE DANTZLER, WALBERTO
PEREZ, RUDOLPH NURSE, ANTHONY HUTCHINSON,
TYRONNE JOHNSON, JOSEPH SHARP, SIDNEY
BURCH and KEVIN DARDEN,

                          **Plaintiffs,**                    **COMPLAINT**

          -against-                                 **11 CV 1056 (SAS)**

ROBERT J. DENNISON, as former Chair, New York State
Division of Parole (the Division) & in his individual          **JURY TRIAL**
capacity; ANTHONY G. ELLIS II, as former Executive           **DEMANDED**
Director of the Division & in his individual capacity;
GEORGE B. ALEXANDER, as former Chair and Chief
Executive Officer of the Division & in his individual capacity;
TERRENCE TRACY, as Chief Counsel to the Division &
in his individual capacity; BRIAN FISCHER, as Commissioner
of the New York State Department of Correctional Services
(DOCS) & in his individual capacity; ANTHONY  J. ANNUCCI,
as Deputy Commissioner and Counsel for DOCS & in his
individual capacity; LUCIEN J. LECLAIRE, JR., as former
Acting Commissioner of DOCS & in his individual capacity;
GLENN S. GOORD, as former  Commissioner of DOCS & in his
individual capacity; and JOHN and JANE DOES 1-50, as Division
and DOCS Legal, Supervisory Training and Policy Personnel
& in their individual capacities,

                          **Defendants.**
-----------------------------------------------------------------------------------X

          Plaintiffs by their attorney, Joel Berger, Esq., for their complaint allege, upon

information and belief, as follows:

                          *NATURE OF THE ACTION*

          1.      This is an action seeking declaratory relief and money damages for false

imprisonment arising from violation of plaintiffs' rights under the Constitution and laws of the United States by present and past employees of the New York State Department of Division of Parole (the Division) and the New York State Department of Correctional Services (DOCS).

2.      The 21 plaintiffs in this action were all incarcerated by the Division for technical violations of Post-Release Supervision (PRS) (New York State Penal Law § 70.45) after the United States Court of Appeals the Second Circuit had held in *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. June 9, 2006), that their PRS custody was illegal because it had been imposed administratively rather than by the sentencing judge, and were confined by DOCS pursuant to those post-*Earley* PRS technical violations.

3.      These 21 plaintiffs are all entitled to declaratory relief, because they were all incarcerated due to technical PRS violations long after defendants knew that the Second Circuit had declared their PRS status illegal in *Earley*.  After *Earley*, these defendants could not even plausibly claim that they were acting upon a good-faith belief that their conduct was lawful and that they would be entitled to full or qualified immunity.  Instead, they foolishly continued to violate plaintiffs' rights in violation of *Earley*, knowing full well that even if the lower state courts and the New York State Court of Appeals ultimately disagreed with *Earley*, the federal district courts would still be bound to enforce *Earley* and defendants would have to comply. Although damages will vary depending on factors such as length of custody, the conditions thereof (e.g., injuries from assaults or accidents, confinement to punitive or administrative segregation) and the physical and emotional harm suffered, and the economic impact (lost wages), each plaintiff is entitled to monetary compensation.[1]

---

[1] All defendants are of course as State officers entitled to indemnification as mandated by New York State Public Officers Law § 17 (3) (a).

*JURISDICTION AND VENUE*

4.      This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth and Fourteenth Amendments to the Constitution of the United States.

5.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 2201.

6.      Venue is lodged in this Court pursuant to 28 U.S.C. § 1391 (b).

*JURY DEMAND*

7.       Plaintiffs demand trial by jury in this action.

*PARTIES*

8.   Plaintiff **KEVIN MICHAEL BENTLEY:**  On October 1, 1999, a judgment of conviction against Bentley for assault in the second degree was entered in Supreme Court, New York County, upon his plea of guilty.  The Court (Wetzel, J.) sentenced Claimant to a determinate term of five years imprisonment, but did not include a period of PRS. Nonetheless, upon Bentley's release from prison on or about December 3, 2003, after having served his complete sentence (with credit for pretrial incarceration -- he had been arrested on November 24, 1998), he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of post-release supervision, a custodial status that he was required to begin serving immediately.  On four subsequent occasions he was incarcerated for technical violations, most recently on or about October 24, 2007 -- long after *Earley* had been decided.  Altogether he was incarcerated for approximately 2½ years on the basis of technical violations of PRS.   However, by Order dated March 7, 2008, the Supreme Court, New York County (Wetzel, J.), granted his application for a writ of *habeas corpus*, and ordered his release from incarceration, on the ground that the determination

subjecting him to post-release supervision had been plainly illegal from the outset. The Order explicitly states: "Neither the plea, the sentence or the commitment papers reference Post Release Supervision and therefore it is not part of the sentence." Bentley was released from custody on or about March 9, 2008. By then he had been subjected to illegal custody for 4¼ years (December 2003 – March 2008) -- approximately 2½ years of which were actual illegal incarceration for technical violations of the terms of the illegal post-release custodial supervision. Approximately 21 months of his PRS custody was post-*Earley*, including approximately 4½ months of actual imprisonment. During his incarceration Bentley was:

    (a)    Attacked and beaten by correction officers;

    (a)    Attacked and beaten by other inmates. (As a Caucasian inmate, he was in the minority and was particularly susceptible to assault by gangs of African-American and Latino inmates.)

    (b)    Placed in solitary confinement, where he was kept in a cell for 23 hours a day and allowed outdoors in a tiny cage for the other hour; and

    (d)    Double-celled with another inmate in a cell suitable for holding only one inmate -- including being double-celled in solitary confinement;

9.    Plaintiff **FELIX TAVARES:**

    (a)    On or about March 23, 2003, a judgment of conviction against Tavares for criminal possession of a weapon in the 3rd degree was entered in Supreme Court, Kings, County, upon his plea of guilty. The sentencing minutes reflect that the Court sentenced Tavares to a determinate term of two years imprisonment, to be followed by an 18-month period of PRS. However, upon his release from prison on or about December 10, 2004, after having served his complete sentence (with credit for good behavior), he was illegally and without judicial authorization subjected by DOCS to a three-year period of

PRS rather than the 18-month period to which he had been sentenced by the Court. The Court had discretion to impose the shorter PRS period, *see* Penal Law § 70.45 (2), yet DOCS usurped the Court's discretion by imposing the longer PRS sentence. (In a letter to the sentencing Court, dated May 19, 2008, defendant Annucci conceded that DOCS had never even bothered to review the sentencing minutes but instead had unilaterally imposed a 3-year PRS period.)

(b)     In late June 2007 -- after the 18-month PRS period to which he had been judicially sentenced had expired, and more than a year after *Earley* had been decided -- Tavares was arrested for having committed technical violations of the conditions of his PRS and was required to remain in prison until his maximum expiration date, illegally calculated by DOCS as June 4, 2008 on the basis of the 3-year PRS period that had been illegally imposed by DOCS. He was finally released from the Franklin Correctional Facility on June 4, 2008, after having been incarcerated illegally for nearly a year. The Superintendent's Certificate of Discharge reflects discharge on June 4 "by final expiration of his sentence."

(c)     During his incarceration Tavares was, *inter alia*, separated from his baby daughter, confined for approximately 4½ months in punitive segregation at the Upstate Correctional Facility, and endured a delay of approximately 7 months in receiving surgery for a serious medical condition.

10.     Plaintiff **JAMES JOHNSON:** On or about May 16, 2001, two judgments of conviction against Johnson for attempted robbery in the second degree (Indictments 1470/00 and 1471/00) were entered in Supreme Court, Queens County, upon his plea of guilty. The Court sentenced him to two determinate terms of 3½ years imprisonment, to

run concurrently.  The Court did not sentence him to any period of PRS.  Nonetheless, upon Johnson's release from prison on or about May 13, 2005, after having served his complete sentence (with time off for pre-trial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to a five-year period of PRS, a custodial status that he was required to begin serving immediately. On or about November 20, 2007, long after *Earley*, Johnson was arrested for violating the conditions of his PRS.  He remained incarcerated in DOCS custody until approximately until approximately July 29, 2008, a period of approximately 8 months.  Most of this period was spent at the Governor Correctional Facility in St. Lawrence County, near the Canadian border, far from Mr. Johnson's home in Queens County.  Johnson's wife, Novelle Johnson, was pregnant when he was arrested.  The child, James Johnson, Jr., was born on December 18, 2007.  Plaintiff Johnson missed the birth of his child and the first seven months of his child's life as a result of his incarceration.  On or about July 23, 2008, the Supreme Court, Queens County, after reviewing the sentencing minutes, ordered both Johnson's release from prison and the termination of his PRS custody, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period.  Johnson was released from prison on or about July 29, 2008.  On August 5, 2008, the Court granted a habeas corpus petition that Johnson had served and filed before his release.  The Court emphasized that Johnson was not, and never had been, legally in PRS custody.  The People did not object, and the record reflects that the State Attorney General's office, although notified of the August 5 proceeding by the Queens County District Attorney's Office, did not appear and was declared by the Court to have defaulted.

11.     Plaintiff **JERRY PULLEY:**  On April 25, 2000, a judgment of conviction against Pulley for a single count of criminal possession of a weapon in the third degree was entered in Supreme Court, New York County.  The judgment followed a jury trial in which Pulley was acquitted on all counts except the weapon charge.  The sentencing minutes reflect that the Court imposed the minimum sentence -- a determinate term of 5 years imprisonment -- and did not impose any PRS.  Nonetheless, upon Pulley's release from state prison on or about July 2, 2004, after having served his complete prison sentence (with credit for pretrial incarceration time), he was illegally and without judicial authorization subjected by DOCS to a 5-year period of PRS.  Subsequently Pulley was twice incarcerated by the Division for technical violations.   The second incarceration began in August 2006, after *Earley* was decided, and lasted approximately 21 months, until May 2008.  However, by Order dated May 5, 2008, the Supreme Court, Washington County (Pritzker, J.S.C.), granted Pulley's application for a writ of *habeas corpus*, ordered that PRS "is hereby stricken from petitioner's sentence," vacated the parole violation, and ordered that he be "discharged from detention on this matter immediately." The Court ruled that the determination subjecting Pulley to PRS had been plainly illegal from the outset because the sentencing court had never imposed any PRS sentence, and that Pulley could not "be held on something that does not exist."  Pulley was released from incarceration on or about May 18, 2008.   During this time Pulley was separated from his his wife Sheeneka, their daughter Daijha Pulley (seven years old), and their baby girl, Azaria Pulley, born on January 29, 2007, while he was imprisoned; he missed Azaria's birth and the first 16 months of Azaria's life due to his illegal incarceration.

12.     Plaintiff **EDWIN RIVERA:**  On May 10, 2000, a judgment of conviction against Rivera for attempted robbery in the first degree was entered in Supreme Court, New York County, upon Claimant's plea of guilty.  The Court sentenced Rivera to a determinate term of 6 years imprisonment. The sentence did not include a period of PRS. Nonetheless, upon Rivera's release from prison on or about February 4, 2005, after having served his complete sentence (with time off for good behavior), he was illegally and without judicial authorization subjected by DOCS to an additional 5-year period of PRS, a custodial status that he was required to begin serving immediately. Approximately 3 years later, on or about March 13, 2008 -- long after *Earley* had been decided -- he was declared to be in violation of the conditions of his post-release supervision, and he was arrested and incarcerated.  However, on June 6, 2008, the Supreme Court, New York County (Hon. Charles H. Solomon, J.S.C., Part 82), after reviewing the sentencing minutes at DOCS's request, ordered both Rivera's release from prison and the termination of PRS, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period whatsoever.

13.     Plaintiff **HECTOR CALDERON:**   In 2002 a judgment of conviction against Calderon for robbery in the first degree was entered in Supreme Court, New York County, upon his plea of guilty. The Court sentenced him to a determinate term of five years imprisonment. The Court did not sentence him to any period of PRS.  Nonetheless, upon his release from prison in 2005, after having served his complete sentence (with time off for pre-trial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to a five-year period of PRS, a custodial status that he was

required to begin serving immediately.  In 2007, long after *Earley* had been decided, Calderon was arrested and returned to prison by the Division for technical violations of his PRS status, and required to remain in prison on the technical violations until August 2008. However, on or about June 12, 2008, the Supreme Court, New York County, after reviewing the sentencing minutes at DOCS's request, ordered both Calderon's release from prison and the termination of his PRS custody, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period.  Calderon was released from prison on or about June 12, 2008, upon the certification of the Superintendent's office that he was being released due to final expiration of his sentence.  He had been subjected to illegal custody for more than three years. Approximately one year of his illegal custody was actual illegal incarceration for technical violation of the terms of the illegal post-release custodial supervision.  That entire period was post-*Earley*.

14.     Plaintiff **KEENAN JENKINS:**  On or about February 4, 2003, a judgment of conviction against Jenkins for attempted burglary in the first degree was entered in Supreme Court, New York County.  The Court (Hon. Jeffrey Atlas, J.S.C.) sentenced him to a determinate term of 3½ years imprisonment.  The Court did not sentence him to any period of PRS.  Nonetheless, upon his release from prison on or about May 13, 2005, after having served his complete sentence (with time off for pre-trial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to a five-year period of PRS, a custodial status that he was required to begin serving immediately. On or about August 31, 2005, he was arrested and returned to prison for violating the conditions of his PRS.  On July 11, 2007, long after *Earley*, he was again arrested and

returned to prison for violating the conditions of his PRS.  He again remained in prison for approximately a year, until July 14, 2008.  That entire year, as well as the latter months of his first incarceration for technical violations of PRS, was post-*Earley*.  On or about July 11, 2008, the Supreme Court, Bronx County, after reviewing the sentencing minutes submitted in support of Jenkins's petition for a writ of habeas corpus, ordered both his release from prison and the termination of PRS, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period.  Jenkins was released from prison on July 14, 2008.

15.     Plaintiff **JOSEPH SANTIAGO**:   On or about October 23, 2000, a judgment of conviction against Santiago for attempted burglary in the second degree was entered in County Court, Suffolk County.  The Court sentenced him to a determinate term of 6 years imprisonment.  The Court (Copertino, J.) did not sentence him to any period of post-release PRS.  Nonetheless, upon his release from prison on or about February 15, 2005, after having served his complete sentence (with time off for pre-trial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to a 5-year period of PRS, a custodial status that he was required to begin serving immediately.  In or about March 2007, long after *Earley* had been decided, he was returned to prison for violating the conditions of his PRS.  He remained in prison for approximately 15 months -- all of it post *Earley* -- and was released in or about June 13, 2008.  The Division had specified that after his release he was to remain subject to the 5-year administratively-imposed PRS sentence, with his maximum expiration date being March 3, 2011.  However, on or about July 30, 2008, the County Court, Suffolk County (Hinrichs, J.), after reviewing the October 2000 sentencing minutes and commitment papers, ordered the termination of

Santiago's PRS on the ground that the determination subjecting Santiago to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period.  Santiago was released from PRS by the Division pursuant to this Order on or about August 8, 2008.

16.   Plaintiff **LAWRENCE JACKSON:**   On or about September 13, 2000, a judgment of conviction against Jackson for criminal possession of a weapon in the third degree (Indictment 6047/00) was entered in Supreme Court, Kings County, upon his plea of guilty.   The Court sentenced him to a determinate term of 3 years imprisonment.  The Court did not impose any period of PRS.   Nonetheless, upon Jackson's release from prison on or about July 9, 2003, after having served his complete sentence (with time off for pretrial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of PRS, a custodial status that he was required to begin serving immediately.   Subsequently, on three occasions, he was incarcerated for technical violations of PRS, for periods lasting respectively, 97 days, 97 days, and approximately one year.   The last of these began with a declaration of delinquency in August 2007, long after *Early* had been decided.   Jackson remained incarcerated until August 15, 2008, when the Supreme Court, Kings County, ordered both his release from prison and the termination of his PRS custody, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period.  Jackson was released from prison on or about August 15, 2008.

17.     Plaintiff **CHRISTOPHER PURDIE:** On or about May 27, 1999, a judgment of conviction against Purdie for attempted robbery in the second degree was entered in Supreme Court, New York County, upon his plea of guilty. The Court sentenced him to a determinate term of 5 years imprisonment.  The Court did not impose any period of post-release supervision PRS.   Nonetheless, upon Purdie's release from prison on or about August 8, 2003, after having served his complete sentence (with time off for pretrial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of PRS, a custodial status that he was required to begin serving immediately.  On at least four occasions since then, one or more of them post-*Earley*, Purdie was arrested and returned to prison for violating the conditions of his PRS.  Altogether he was incarcerated for nearly 3½ years on account of these technical violations.  On or about August 13, 2008, more than two years after *Earley*, the Supreme Court, Bronx County, after reviewing the relevant papers, ordered the termination of PRS, on the ground that the determination subjecting Purdie to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS period.  Purdie was released from DOCS's Watertown Correctional Facility in Watertown, NY on August 15, 2008, pursuant to the Superintendent's certification that he had completed the maximum expiration of his sentence.

18.     Plaintiff **ROBERT GIL:**   On or about May 13, 1999, a judgment of conviction against Gil for attempted robbery in the first degree was entered in Supreme Court, New York County, upon his plea of guilty (Hon. Arlene Silverman, J.S.C.).   The Court sentenced him to a determinate term of 3½ years imprisonment.   The Court did not impose any period of PRS.   Nonetheless, upon Gil's release from prison on or about April

18, 2002, after having served his complete sentence (with time off for pretrial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of PRS, a custodial status that he was required to begin serving immediately.  Subsequently, on at least four occasions, some of them post-*Earley,* he was arrested and returned to prison for violating the conditions of his PRS. On September 8, 2008, Justice Silverman, upon consent of the prosecution, resentenced Gil to the "originally imposed determinate sentence without any term of post-release supervision." As a result of this order, Gil was released from prison on or about September 10, 2008 -- more than two years after *Earley.*

19.    Plaintiff **GERALD EDMONDS:**  On or about March 15, 2001, a judgment of conviction against Edmonds was entered in Supreme Court, Queens County.  The Court sentenced him to a determinate term of 3½ years imprisonment.  The Court did not impose any period of PRS.   Nonetheless, upon his release from prison after having served his complete sentence, he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of PRS, a custodial status that he was required to begin serving immediately.  On one or more occasions thereafter he was arrested and returned to prison by the Division for violating the conditions of his PRS.   Altogether he was incarcerated for more than two years on account of technical violations, some of which occurred post –*Earley.*  On September 23, 2008, the Supreme Court, Queens County, after reviewing the sentencing minutes at DOCS's request, ordered both Edmonds's release from prison and the termination of his PRS custody, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset because the sentencing judge had not imposed any PRS.

20.     Plaintiff **EDWARD MONTRANO:**   On or about May 23, 2000, a judgment of conviction against Montrano for attempted robbery in the second degree (Indictment 8301/99) was entered in Supreme Court, New York County (Hon. Charles H. Solomon, J.S.C.).   The Court sentenced him to a determinate term of 3 years imprisonment. The Court did not impose any period of post-release supervision PRS.   Nonetheless, upon his release from prison, after having served his complete sentence, he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of PRS, a custodial status that he was required to begin serving immediately.   On at least three occasions thereafter he was incarcerated by the Division for technical violations of PRS, and served a total of approximately 17 months in prison on these violations, some of which occurred post-*Earley*.   Montrano was released from incarceration by court order on or about October 23, 2008, and in a subsequent order of November 21, 2008, Justice Solomon, with the consent of the People, ordered that his previously imposed sentence that did not include any period of PRS supervision would "not be disturbed."

21.     Plaintiff **DWAYNE DANTZLER:**   On or about November 16, 2000, a judgment of conviction against Dantzler for attempted robbery in the first degree (Indictment 3593/00) was entered in Supreme Court, Bronx County, upon his plea of guilty (Hon. Barbara Newman, J.S.C.).   The Court sentenced Claimant to a determinate term of 4 years imprisonment.   The Court did not impose any period PRS.   Nonetheless, upon Dantzler's release from prison on or about February 24, 2004, after having served his complete sentence (with time off for pretrial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to an additional five-year period of PRS, a custodial status that he was required to begin serving immediately.   On

three occasions since then, some of them post-*Earley*, he was incarcerated for technical violations of PRS; each period of incarceration lasted approximately a year.  However, on or about September 22, 2008, Justice Newman ordered, upon consent of the People, that her original sentence that did not include any term of PRS "shall be unaltered and shall remain the sentence of the Court."   As a result of this order, Dantzler was released from prison on or about September 26, 2008.

22.    Plaintiff **WALBERTO PEREZ:**    Upon his conviction pursuant to Indictment 7506/99 (Supreme Court, New York County), Perez was sentenced to a determinate period of imprisonment.  The Court (Hon. Ronald A. Zweibel, J.S.C.) did not impose any period of PRS.  However, upon his release from prison, having served his complete sentence, Perez was illegally and without judicial authorization subjected by DOCS to an additional period of PRS, a custodial status that he was required to begin serving immediately.  He was returned to prison by the Division on at least one technical violation of PRS, and served approximately one year in prison on this violation, all of which occurred post –*Earley*.  On November 6, 2008, Justice Zweibel issued an Order terminating Perez's PRS custody.  Justice Zweibel's Order of November 6, 2008 declared that the PRS previously imposed by DOCS was a "nullity and voided," that the technical violations of PRS previously imposed by the Division were also "a nullity and voided," and that absent any other terms of imprisonment, holds or detainers -- there were none -- DOCS was to release Perez "forthwith into the community" without any further PRS supervision.

23.    Plaintiff **RUDOLPH NURSE:**    On November 15, 2000, Nurse was sentenced to a determinate sentence of 5 years (Ind./SCI No. 67-2000, Rockland County) without any period of post-release supervision PRS.  Upon his release from prison, having

served his complete sentence, Nurse was illegally and without judicial authorization subjected by DOCS to an additional 5-year period of PRS, a custodial status that he was required to begin serving immediately.  Nurse was returned to prison on at least one technical violation of PRS, on or about November 8, 2006 -- post *Earley* -- and served approximately one year in prison on this violation.  He was subsequently in PRS parole custody for approximately another year.  On December 12, 2008, the Court (Hon. Catherine M. Bartlett) ordered, with the consent of the People, that "the defendant is resentenced to the originally imposed determinate sentence without any term of post-release supervision."  Nurse was thereupon released from PRS.

24.     Plaintiff **ANTHONY HUTCHINSON**:  On March 14, 2000, Hutchinson was sentenced to a determinate sentence of 3 years for attempted robbery in the second degree (Ind. No. 43/2000, New York County, Hon. Charles Solomon, J.S.C.) without any period of post-release supervision PRS.  Upon his release from prison on or about July 23, 2002, having served his complete sentence, Hutchinson was illegally and without judicial authorization subjected by DOCS to an additional 5-year period of PRS, a custodial status that he was required to begin serving immediately.  Hutchinson had at least four parole warrants issued against him for technical violations of PRS, and altogether he served more than 4½ months in prison by order of the Division on these violations, some of which occurred post-*Earley*.  During his last period of imprisonment for a PRS violation (parole warrant #455020), Hutchinson filed a pro se petition for a writ of habeas corpus.  On January 12, 2009, the Supreme Court, New York County Court (Hon. A. Kirke Bartley) granted Hutchinson's petition for a writ of habeas corpus and vacated his PRS status as illegal. Justice Bartley ruled that Hutchinson's PRS was illegal because it had been imposed

by DOCS rather than the sentencing judge.   Justice Bartley's Order  (Index No. 08-403103, SCID 30243-2008) also vacated parole warrant #455020 and directed that Hutchinson be released from incarceration.   Hutchinson was released from incarceration on or about January 21, 2009.

25.    Plaintiff **TYRONNE JOHNSON:**   Johnson was sentenced to a determinate sentence of 4½ years, upon his plea of guilty for sexual abuse in the first degree and burglary in the second degree (No. 290/1999,Rockland County) without any period of post-release supervision PRS.  Upon his release from prison in 2005, having served his complete sentence, he was illegally and without judicial authorization subjected by DOCS to an additional 5-year period of PRS, a custodial status that he was required to begin serving immediately.  He was thereafter returned to prison at least twice for technical violations of PRS, and altogether he served at least 15 months in prison on these violations, some of which was post-*Earley*.   On November 19, 2008, the Court (Hon. William K. Nelson, County Court, Rockland County) upon the consent of the People, ordered DOCS to "calculate the term of imprisonment imposed … without post-release supervision" and that "the defendant shall remain in the community without any further supervision" on PRS.

26.    Plaintiff **JOSEPH SHARP:**   Sharp was sentenced by the Supreme Court, New York County, to a determinate sentence of 5 years, (Ind. No. 6811-99) without the Court imposing any period of post-release supervision PRS.  Upon his release from prison, having served his complete sentence, he was illegally and without judicial authorization subjected by DOCS to an additional period of PRS, a custodial status that he was required to begin serving immediately.  He was thereafter returned to prison on at least three occasions for technical violations of PRS, and altogether he served at least 31 months in prison on

these violations, much of which was post-*Earley*.  However, on November 20, 2008, the Court (Hon. Carol Berkman) ordered, with the consent of the People, that the original determinate sentence of 5 years without PRS would stand.  On November 24, 2008, Sharp was released from the Ulster Correctional Facility, where he had been serving time on the last of his technical violations, by maximum expiration of sentence.

27.   Plaintiff **SIDNEY BURCH**:

(a)   On September 7, 2004, a judgment of conviction against Burch for attempted robbery in the 2nd degree was entered in Supreme Court, Bronx, County, upon his plea of guilty.  The judgment, following an admission to violation of an earlier sentence of probation for the offense, sentenced Burch as a first-time felony offender to a determinate term of two years imprisonment.  The sentence did not include a period of PRS.  Nonetheless, upon Burch's release from prison on or about May 20, 2005, after having served his complete sentence (with credit for pretrial incarceration), he was illegally and without judicial authorization subjected by defendants to an additional three-year period of PRS, a custodial status that he was required to begin serving immediately.  In July 2005 he was declared to be in violation of the conditions of his PRS, and he was arrested and incarcerated.

(b)  Burch sought habeas corpus relief on the ground that he should not have been on PRS to begin with because PRS could only be imposed by a judge.  The Supreme Court, Wyoming County (Attica, NY), denied relief on January 7, 2007, approximately 7 months after *Early*.  *People ex rel. Burch v. NYS Dept. of Corrections*  (Index No. 20,332-06).  Citing to its opinion of November 28, 2006 in *People ex re. Eaddy v. NYS Dept. of Correctional Svcs.* (Index No. 20,331-06), that Court explicitly defied *Earley*, stating that

*Early* "does not constitute binding authority on this Court."  However, by Opinion dated February 20, 2008, the Appellate Division of the Supreme Court of the State of New York, Fourth Department, granted Burch's application for a writ of *habeas corpus*, and ordered his release, on the ground that the determination subjecting him to PRS had been plainly illegal from the outset.   *People ex rel. Burch v. Goord*, 48 A.D.3d 1306, 853 N.Y.S.2d 756 (4th Dept. 2008).  The Appellate Division, citing *Earley*, held that "in the event that a court does not impose a period of postrelease supervision as part of a defendant's sentence, the sentence has no postrelease supervision component," and that since postrelease supervision had not been "expressly imposed by the court" that sentenced Burch, his release from confinement was mandatory.    *People ex rel. Burch*, *supra*, 853 N.Y.S.2d at 757.  Two months earlier the Appellate Division, Third Department had similarly recognized that it would be futile to ignore *Earley*.  *Dreher v. Goord*, 46 A.D.3d 1261 and *Quinones v. NYS Dept. of Correctional Svcs.*, 46 A.D.3d 1268 (both decided December 27, 2007).

(c)    Burch was released from his place of incarceration, DOCS's Southport Correctional Facility in Pine City, New York (near Elmira), on February 25, 2008.  He had been subjected to illegal custody for 2¾ years -- May 2005 – February 2008 -- more than 2½ years of which were actual illegal incarceration for technical violation of the terms of the illegal PRS, more than 20 months of which were served after the Second Circuit had decided *Earley* on June 9, 2006.  During this time the Division and DOCS were well aware that his confinement violated *Earley*, due to his litigation on the subject as described above.

(d)    During his incarceration Burch suffered worse than many other prisoners, because he was:

(i)   Threatened with assault by other inmates because he had co-operated with the prosecution against his co-defendants in his criminal case;

(ii)   Threatened with assault by other inmates associated with gangs even if the inmates had nothing to do with his criminal case or his co-defendants, simply because of his reputation as a "snitch;"

(iii)   Placed in protective custody, where he was kept in a cell for 23 hours a day, to avoid the risk of assaults by other inmates;

(iv)   Double-celled repeatedly with other inmates in protective custody cells suitable for holding only one inmate;

(v)   Subjected to punitive segregation, in which he also was kept in a cell 23 hours per day for refusing to be double-celled;

(vi)   Double-celled in punitive segregation;

(vii)   Denied attention for a serious dental problem; and

(viii)   Repeatedly subjected to such stress that he required prescription medications for anxiety and depression.

28.   Plaintiff **KEVIN DARDEN:** On September 29, 1999, a judgment of conviction against Darden for robbery in the first degree was entered in Supreme Court, Queens County, upon his plea of guilty. The Court sentenced him to a determinate term of five years imprisonment. The Court did not sentence him to any period of PRS Nonetheless, upon his release from prison on or about December 30, 2003, after having served his complete sentence (with time off for pre-trial incarceration and good behavior), he was illegally and without judicial authorization subjected by DOCS to a five-year period of PRS, a custodial status that he was required to begin serving immediately.   Subsequently he was incarcerated for technical PRS violations on two occasions.   The first period of incarceration lasted from approximately January 11, 2005 – January 11, 2006.   The second period lasted approximately one year, until June 30, 2008, all or nearly all of it post-*Earley.* He was supposed to remain incarcerated until his maximum release date, illegally calculated

by DOCS as September 14, 2009.  However, he was instead released on June 30, 2008, pursuant to a DOCS superintendent's certification that he had "completed his maximum term."  He was released because in a letter to the sentencing judge dated May 23, 2008, defendant Annucci conceded that DOCS had unilaterally imposed a PRS sentence even though DOCS had been in possession of the sentencing minutes and a "recent review" by DOCS if those minutes had established that "PRS was not pronounced by the Court at the time of sentence."

### *DEFENDANTS*

29.    Defendant **ROBERT J. DENNISON** was Chairman of the Division of Parole at the time *Early* was decided (June 9, 2006) and remained in that position until approximately February 2007.  During this period defendant **ANTHONY G. ELLIS II** was Executive Director of the Division, and defendant **TERRENCE TRACY** was Chief Counsel to the Division.  Defendant **GEORGE B. ALEXANDER** became Acting Chairman and Chief Executive Officer of the Division in February 2007 and was Chairman and Chief Executive Officer from May 2007 until June 2009.  During this period defendant Tracy remained Chief Counsel to the Division.  Dennison, Ellis and Alexander were responsible for the policy, practice, supervision, implementation and conduct of all Division matters, including PRS, and for the appointment, training, supervision, and conduct of all Division personnel, including those charged with the responsibility of implementing the Division's PRS policies.  In addition, they were responsible for enforcing the rules of Division, and for ensuring that the Division and its personnel obeyed the Constitution and laws of the United States.  Defendant Tracy, as the Division's Chief Counsel, was a policy-maker and the person most responsible for

informing the Division's other policy-makers of their obligations under the Constitution and laws of the United States as mandated by *Earley*.  Dennison, Ellis, Alexander and Tracy are all responsible for the Division's decision to incarcerate for technical PRS violations, even after *Earley*, individuals who had been sentenced to PRS administratively without judicial authorization.  Defendants Dennison, Ellis, Alexander and Tracy are sued in their official and individual capacities.

30.    Defendant **BRIAN FISCHER** has been Commissioner of DOCS since January 1, 2007, defendant **LUCIEN J. LECLAIRE, JR.** was Acting Commissioner of DOCS from August 30 – December 30, 2006, and defendant Defendant **GLENN S. GOORD** was the Commissioner of DOCS on the date *Early* was decided (June 9, 2006) and until August 30, 2006. The DOCS commissioner is responsible for the policy, practice, supervision, implementation and conduct of all DOCS matters, including PRS, and for the appointment, training, supervision, and conduct of all DOCS personnel, including those charged with the responsibility of implementing DOCS's PRS policies.  In addition, the DOCS Commissioner is responsible for enforcing the rules of DOCS, and for ensuring that DOCS personnel obey the Constitution and laws of the United States. Defendant **ANTHONY J. ANNUCCI**, as a Deputy Commissioner of, and Counsel to DOCS, is a policy-maker and the person most responsible for informing the Division's other policy-makers of their obligations under the Constitution and laws of the United States as mandated by *Earley*.  Fischer, Leclaire, Goord and Annucci are all responsible for DOCS's decision to perpetuate without inquiry the incarceration for technical PRS violations, even after *Earley*, of individuals who had been sentenced to PRS administratively without judicial authorization. Fischer, Leclaire and Goord and Annucci

are sued in their official and individual capacities.

31.     At all relevant times, defendants "Jane/John Does 1-50" were training, supervisory and policy making personnel within the Division and DOCS who implemented, enforced, perpetuated and/or allowed the Division's and DOCS's post-*Earley* PRS policies that are the subject of this action, acting in their capacity of agents, servants and employees of the named defendants and within the scope of their employment as such. Plaintiffs are unable to determine the names of these supervisory defendants at this time and thus sue them under a fictitious designation. All are sued in their official and individual capacities.

32.     During all times mentioned in this complaint, defendants, separately and in concert, engaged in acts and/or omissions which constituted deprivations of plaintiffs' constitutional rights, and the privileges and immunities of the plaintiffs, and while these acts were carried out under color of law, they had no justification or excuse and were illegal and improper, and defendants knew so once the Second Circuit had decided *Early*.

## FACTS

33.     Plaintiffs repeat and reallege the allegations contained in ¶ 1-32, above.

34.     On June 9, 2006, the Division and its officials, and DOCS and its officials, were placed on notice that the PRS custodial supervision of individuals who has been sentenced to PRS administratively rather than by a judge was "contrary to clearly established federal law as determined by the United States Supreme Court." *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. June 9, 2006).

35.     The *Earley* court declared that DOCS should have known better than to unilaterally impose PRS sentences because of *Hill v. United States ex. rel. Wampler*, 298

U.S. 460 (1936), which "undeniably stands for the proposition that the only valid terms of a defendant's sentence are the terms imposed by the judge." *Earley v. Murray*, 462 F.3d 147, 149 (2d Cir. 2006) (denying rehearing with opinion).[2]

36.     Despite the emphatic holding of *Earley*, and the obligation of the federal district courts to enforce that holding by granting habeas corpus relief regardless of whether or not the state courts agreed with the Second Circuit, Division and DOCS policy-making officials ignored and refused to comply with *Earley*.

37.     In the aftermath of *Earley*, numerous individuals who had been subjected to PRS custody solely by DOCS rather than by the sentencing judge were incarcerated by the Division for technical violations of PRS, when they should not have been under PRS custody to begin with.

38.     The Division was fully aware that a very large number of persons its was supervising under PRS had been placed on PRS administratively by DOCS rather than by a judge, yet after *Earley* it continued to re-incarcerate such persons for technical PRS violations (e.g., failure to report or to adhere to curfew restrictions) without making any inquiry as to whether their PRS status was lawful under *Earley*.

39.     DOCS was fully aware of *Earley*, yet it continued to confine persons who had been incarcerated by the Division for technical violations of PRS after *Earley,* without making any inquiry as to whether the sentencing court rather than DOCS had sentenced them to PRS.

40.     Both the Division and DOCS were especially aware of *Early* because numerous persons incarcerated for technical violations of administratively-imposed PRS

---

[2] The State sought review by the Supreme Court of the United States in *Earley*, but its petition for a writ of certiorari was denied *sub nom. Burhlre v. Earley*, 551 U.S. 1159, 127 S.Ct.. 3014, 168 L.Ed.2d 752 (2007).

after *Earley* filed habeas corpus petitions in the state courts.   Although defendants prevailed in some of these cases because the state courts accepted defendants' assertions that those courts were not technically "bound" to follow *Earley*, defendants were obviously aware that even if the state courts defied *Early* as non-binding, the federal district courts -- which *were* bound by *Early* -- would have to grant habeas corpus relief. Regardless of whether the lower state courts or the Appellate Divisions or even the New York State Court of Appeals ultimately disagreed with *Earley*, individuals who had been placed on PRS administratively and sent to prison for PRS violations administratively were entitled to relief in federal court under *Earley*.   By the time plaintiffs were sent back to prison for technical violations of PRS, "a court with the power to 'clearly establish' a federal right had held that administratively-imposed PRS violated due process."  *Santiago v. Fischer*, 2009 WL 3852001 (E.D.N.Y. Nov. 18, 2009).  (The State chose to withdraw its interlocutory appeal in *Santiago* (2d Cir, Appeal No. 09-5021, Stipulation of Oct. 4, 2010.)   The Stipulation specifies that the State's appeal was withdrawn with prejudice*.*)

41.   The defense that defendants refused to comply with *Earley* out of alleged "confusion" in the state courts is untenable.  It is no more viable than a claim by a local school board after *Brown v. Board of Education*, 347 U.S. 483 (1954), that it needn't comply because of "confusion" in the resistant state courts and state legislatures. The Division and the DOCS officials named as defendants herein deliberately ignored the reality presented by *Earley*, did not undertake any review to determine which persons in PRS custody had been placed there illegally under *Earley* as those persons were being charged with technical PRS violations and sent back to prison, and continued to violate and incarcerate persons accused of technical violations of PRS long after *Earley*.

42.     Although the Second Circuit stated in *Earley* that "[o]ur ruling is not intended to preclude the state from moving in the New York courts to modify Earley's sentence to include the mandatory PRS term," that statement was not an invitation to DOCS and the Division to ignore *Earley* and rest upon administrative fiat to return plaintiffs to prison for technical PRS violations and to keep them incarcerated.

43.     Defendants had an obligation to do what *Earley* said they must do:  ask a state court, presumably the sentencing judge, to modify the sentence to include PRS.   The New York State Court of Appeals has held that where a sentencing court may have made a mistake, it is "within the trial court's inherent power to correct the error made at sentencing" and the one-year limitation of Criminal Procedure Law §440.40 is not a "restriction on the court's inherent ability to correct its own errors." *People v. Wright*, 56 N.Y.2d 613, 614, 615, 435 N.E.2d 1088, 450 N.Y.S.2d 473 (1982).  *Wright* was recognized and applied in *Earley* itself on remand, 2007 WL 1288031 (E.D.N.Y. 2007). Defendants had every opportunity in the wake of *Earley* to proceed within the boundaries of the law.

44.     Instead of doing what *Earley* commanded as a matter of federal constitutional law, defendants chose to ignore *Earley*, to continue keeping plaintiffs on PRS status and sending them back to prison for technical violations, and to await a determination of the New York State Court of Appeals -- which did not arrive until April 29, 2008.  *Matter of Garner v. New York State Department of Correctional Services, et al.*, 10 N.Y.3d 358, 889 N.E.2d 467, 859 N.Y.S.2d 590 (2008) (holding as a matter of state law that only a court, not an administrative agency, can impose sentence).

45.     During the period between *Earley* and *Garner* the Division violated plaintiffs' PRS status on technical grounds, and DOCS incarcerated them pursuant to those

determinations, without asking the sentencing judges whether they should be on PRS to begin with -- the only remedy other than outright release from custody permitted under *Earley*.

46.    The sentencing judges had discretion to sentence plaintiffs to shorter PRS terms than DOCS had imposed, and to release prisoners reincarcerated due to technical PRS violations who had served more than the minimum PRS term.  "[T]he PRS term may vary and must be set at the court's discretion (*see e.g.* Penal Law § 70.45 [2] [b]-[f])."  *People v. Sparber*, 10 N.Y.3d 457, 470, 889 N.E.2d 459, 859 N.Y.S.2d 582 (2008).   This has been so ever since PRS was established. *See* Penal Law former § 70.45 (2), in force from 1998-2004, under which PRS sentences of 1½ years rather than 3 years, and 2½ years rather than 5 years, were available at the discretion of the sentencing judge.  DOCS routinely sentenced prisoners to the maximum 3-year and 5-year PRS terms, thereby usurping the discretion of the sentencing courts to apply the shorter terms.  Many of the plaintiffs herein were well past the 1½-year or 2½-year periods of PRS custody that could have been imposed when the Division reincarcerated them, post-*Earley*, for technical PRS violations.   At the resentencings alluded to in *Earley* the state courts could have imposed shorter PRS terms than the maximums imposed by DOCS, and could have released prisoners who had already served such shorter PRS terms.

47.    Only after *Garner* did defendants begin making inquiry of some sentencing judges, asking them to impose PRS *nunc pro tunc*.  Defendants clearly did not consider their requests time-barred (*see People v. Wright,* cited in ¶ 43 above), for they did not wait for additional legislation (subsequently enacted two months after *Garner*, effective June 30, 2008, New York Correction Law §601-d, L. 2008 c. 141 § 5) before making such requests.

48.    In several instances -- but only after *Garner* or in some cases after the effective date of §601-d -- defendants asked plaintiffs' sentencing judges to impose PRS *nunc pro tunc*.  None of plaintiffs' sentencing judges did so.[3]

### FIRST CLAIM FOR RELIEF

49.    Plaintiffs repeat and reallege the allegations contained in ¶¶ 1-48.

50.    Defendants, by their conduct toward plaintiffs alleged herein, violated plaintiffs' rights guaranteed by 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request judgment against defendants as follows:

(a)    Declaratory relief declaring that defendants have violated the constitutional rights of every plaintiff, as alleged herein;

(b)    Compensatory damages for each plaintiff against all defendants, jointly and severally, based upon the harm suffered by each individual plaintiff;

(c)    Punitive damages against all defendants, jointly and severally;

(d)    Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

---

[3] All of the plaintiffs herein have claims pending in the New York State courts, but none of those claims has been finally resolved.  The undersigned represents them on their state claims, having accepted representation of most of them at the request of the Legal Referral Service -- a joint project of the Association of the Bar of the City of New York and the New York County Lawyers Association, on which the undersigned serves as a member of the Service's Civil Rights Panel.

The New York State Court of Appeals recently accepted another PRS case for review, and in all likelihood that case will resolve plaintiffs' state law claims.  *Donald v. State*, 24 Misc.3d 329, 875 N.Y.S.2d 435 (Ct. Claims 2009) (Milano, J.) (finding liability), *rev'd*, 73 A.D.3d 1465, 900 N.Y.S.2d 818 (4th Dept. 2010), *motion for leave to appeal granted*, Motion No. 2010-1235, 2011 Slip Op. 60824, 2011 WL 67527 (Jan. 11, 2011).  *See also Burch v. State* 24 Misc.3d 1242, 901 N.Y.S.2d 898, 2009 WL 2710245 (Ct. Claims 2009) (Milano, J.) (finding liability).

Plaintiffs herein participated as *Amici Curiae* on the successful *Donald* motion for leave to appeal to the Court of Appeals, submitted after that Court had denied leave to appeal last October 21 in two Third Department cases that had ruled against the claimants (*Nazario v. State*, 75 A.D. 3d 715, 905 N.Y.S.2d 328 (3rd Dept. 2010), *leave to appeal denied*, 15 N.Y.3d 712 (2010), and *Carollo v. State*, 75 A.D.3d 736, 903 N.Y.S.2d 285 (3rd Dept. 2010), *leave to appeal denied*, 15 N.Y.3d 711 (2010)).  Plaintiffs will participate again as *Amici Curiae* on the appeal itself, scheduled to be argued in late April or early May 2011.

(e)      Such other and further relief as this Court deems just and proper.

Dated:  New York, New York
         February 16, 2011

/s/ Joel Berger

**JOEL BERGER**

360 Lexington Avenue, 16th Fl.

New York, New York 10017

(212) 687-4911

**ATTORNEY FOR PLAINTIFFS**